UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| JEFFREY W. THOMPSON, | ) | |
| | ) | |
| Plaintiff(s), | ) | |
| | ) | |
| vs. | ) | Case No. 4:23-CV-357 SRW |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant(s). | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on review of an adverse ruling by the Social Security Administration. The Court has jurisdiction over the subject matter of this action under 42 U.S.C. § 405(g). The parties consented to the exercise of authority by the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Plaintiff filed a Brief in support of the Complaint. ECF No. 19. Defendant filed a Brief in Support of the Answer. ECF No. 21. Plaintiff did not file a Reply. The Court has reviewed the parties' briefs and the entire administrative record, including the transcripts and medical evidence. Based on the following, the Court will affirm the Commissioner's decision.

**I.      Factual and Procedural Background**

On August 24, 2018, Plaintiff Jeffrey W. Thompson protectively filed applications for disability insurance benefits ("DIB") under Title II, 42 U.S.C. §§ 401, *et seq.*, and supplemental security income (SSI) under Title XVI, 42 U.S.C. §§ 1381, *et seq.*, with an alleged onset date of

January 26, 2016.[1] Tr. 10, 304-318. Plaintiff's applications were denied. Tr. 122-51, 154-59. On February 8, 2019, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 161-62.

Plaintiff appeared for a telephonic hearing, with the assistance of counsel, on November 19, 2019. Tr. 34-70. Plaintiff testified concerning his disability, daily activities, functional limitations, and past work. *Id*. The ALJ also received testimony from vocational expert ("VE") Bob Hammond. *Id*. Upon Plaintiff's request, a supplemental video hearing was held on March 14, 2022, in which both Plaintiff and a second vocational expert, Karen Thaler, testified. Tr. 71-104, 219. On May 18, 2022, the ALJ issued an unfavorable decision finding Plaintiff not disabled. Tr. 7-29. Plaintiff filed a request for review of the ALJ's decision with the Appeals Council. Tr. 295-96. On February 15, 2023, the Appeals Council denied Plaintiff's request for review. Tr. 1-6. Accordingly, the ALJ's decision stands as the Commissioner's final decision.

With regard to Plaintiff's testimony, medical records, and work history, the Court accepts the facts as presented in the parties' respective statements of facts and responses. The Court will discuss specific facts relevant to the parties' arguments as needed in the discussion below.

## II.     Legal Standard

A disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A claimant has a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to

---

[1] The record reveals Plaintiff previously filed an application for DIB with an onset date of January 26, 2016, which was denied. Tr. 108. On May 23, 2018, an Administrative Law Judge issued an unfavorable decision. Tr. 105-21.

2

do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" § 1382c(a)(3)(B).

The Commissioner follows a five-step sequential process when evaluating whether the claimant has a disability. 20 C.F.R. § 416.920(a)(1). First, the Commissioner considers the claimant's work activity. If the claimant is engaged in substantial gainful activity, the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether the claimant has a severe impairment "which significantly limits claimant's physical or mental ability to do basic work activities." *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010); *see also* 20 C.F.R. § 416.920(a)(4)(ii). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *see also* 20 C.F.R. §§ 416.920(c), 416.920a(d).

Third, if the claimant has a severe impairment, the Commissioner considers the impairment's medical severity. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), (d).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, the Commissioner assesses whether the claimant retains the "residual functional capacity" ("RFC") to perform his or her past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(5)(i). An RFC is "defined as the most a claimant can still do despite his or her physical or mental limitations." *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir.

2011); *see also* 20 C.F.R. § 416.945(a)(1). While an RFC must be based "on all relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations," an RFC is nonetheless an "administrative assessment"—not a medical assessment—and therefore "it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC." *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016). Thus, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). Ultimately, the claimant is responsible for *providing* evidence relating to his RFC, and the Commissioner is responsible for *developing* the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3). If, upon the findings of the ALJ, it is determined the claimant retains the RFC to perform past relevant work, he or she is not disabled. 20 C.F.R. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC does not allow the claimant to perform past relevant work, the burden of production to show the claimant maintains the RFC to perform work which exists in significant numbers in the national economy shifts to the Commissioner. *See Brock v. Astrue*, 574 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work which exists in significant numbers in the national economy, the Commissioner finds the claimant not disabled. 20 C.F.R. § 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, the Commissioner finds the claimant disabled. *Id.* At Step Five, even though the *burden of production* shifts to the Commissioner, the *burden of persuasion* to prove disability remains on the claimant. *Hensley*, 829 F.3d at 932.

4

If substantial evidence on the record as a whole supports the Commissioner's decision, the Court must affirm the decision. 42 U.S.C. §§ 405(g); 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Id*. Under this test, the court "consider[s] all evidence in the record, whether it supports or detracts from the ALJ's decision." *Reece v. Colvin*, 834 F.3d 904, 908 (8th Cir. 2016). The Court "do[es] not reweigh the evidence presented to the ALJ" and will "defer to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence." *Id*. The ALJ will not be "reverse[d] merely because substantial evidence also exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently." *KKC ex rel. Stoner v. Colvin*, 818 F.3d 364, 370 (8th Cir. 2016).

### III.    The ALJ's Decision

Applying the foregoing five-step analysis, the ALJ found Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2021. Tr. 12. Plaintiff has not engaged in substantial gainful activity since January 26, 2016, his alleged onset date of disability. *Id*. Plaintiff has the severe impairments of "degenerative disc disease of the lumbar spine, degenerative joint disease of the knees status-post bilateral total knee replacements in 2016, stage 3A chronic kidney disease, obstructive sleep apnea and morbid obesity." Tr. 12-13. Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. Tr. 14. The ALJ found Plaintiff had the following RFC through the date last insured:

> [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he should never be required to climb

ropes, but he can occasionally climb ladders, scaffolds, ramps and stairs. He can occasionally stoop, kneel, crouch and crawl. In addition, he must avoid concentrated exposure to extreme heat, extreme cold and vibration.

Tr. 14.

The ALJ found Plaintiff is capable of performing past relevant work as a press operator because such work does not require the performance of work-related activities precluded by his RFC. Tr. 21. The ALJ also determined Plaintiff could perform other jobs that exist in significant numbers in the national economy, including representative occupations such as Folder (*Dictionary of Occupational Titles* ("*DOT*") No. 369.687-018, with approximately 150,000 positions nationally), Classifier (*DOT* No. 36[1].687-014, with approximately 400,000 positions nationally), and Ironer (*DOT* No. 590.685-042, with approximately 222,000 positions nationally). Tr. 21-22. In making this determination, the ALJ acknowledged that Plaintiff was 48 years old, which is defined as a younger individual 18-49, on January 26, 2016, his alleged date of disability, but that he subsequently changed age categories to an individual closely approaching advanced age. Tr. 21 The ALJ further noted Plaintiff had at least a high school education. *Id.*

The ALJ concluded Plaintiff has not been under a disability, as defined in the Social Security Act, from January 26, 2016 through the date of her decision, issued on May 18, 2022. *Id.*

**IV.   Discussion**

Plaintiff presents three assignments of error: (1) the ALJ failed to properly evaluate his RFC because the record reflects a sedentary exertional level limitation, rather than a light work limitation; (2) the ALJ failed to properly evaluate his credibility; and (3) the ALJ inappropriately relied on a Fourth Circuit Court of Appeals case. ECF No. 19.

6

## A. The RFC Determination

Plaintiff argues "the evidence as a whole supports a finding that he is limited to no more than sedentary work," rather than the light work limitation provided by the ALJ. *See* ECF No. 19 at 4. In making this argument, Plaintiff first points to a December 28, 2018 examination by non-treating physician, Dr. Paul Hilton, which was performed in connection with a workers' compensation claim from an injury that occurred in 2015. Within this record, Dr. Hinton summarized Plaintiff's medical history and defined his primary diagnoses as "bilateral knee strain with exacerbation of pre-existing degenerative joint disease resultant from the occupational injury on April 22, 2015" and status post left and right total knee arthroplasty performed on April 13, 2016. Tr. 848. Dr. Hinton noted Plaintiff was morbidly obese, ambulated with an antalgic gait, exhibited reduced grip strength and range of motion in the knees, and was unable to squat. Tr. 847-48. Dr. Hinton opined that Plaintiff was unable to work and should avoid pushing and pulling; heavy lifting and strenuous activity; prolonged sitting, standing, walking, stooping, bending, squatting, twisting, or climbing; excessive or repetitive use of his upper extremities; and use of equipment that creates torque vibration or impact to his upper extremities. Tr. 849.

The ALJ determined Dr. Hinton's opinion to be unpersuasive for the following reasons:

> [Dr. Hinton's] statement that the claimant is "unable to compete in the open labor market due to the combined limitations of his knees and hands" is a determination reserved for the Commissioner of Social Security and is not considered. The objective evidence does not support this level of limitation. It is noted that this report was submitted the same month the claimant underwent his consultative examination. The examiner found no limitations at all on the claimant's manual dexterity. Furthermore, the claimant's gait was noted to be normal and unassisted.

Tr. 20 (citations omitted).

The consultative examination referred to by the ALJ was performed on December 10, 2018, by another non-treating physician, Dr. Nirmala Mathew. Tr. 833-84. The ALJ summarized her report and found it to be more persuasive than Dr. Hinton's opinion:

> [Dr. Mathew] noted the claimant drove himself to the appointment. He reported bilateral carpal tunnel release surgery in 2013 and bilateral total knee replacements in 2016. Upon examination, the claimant's lungs were clear and there was no tenderness or deformity in his thoracic or lumbar spine. He exhibited no edema and his gait was normal and unassisted. He was able to bend, squat, walk on his toes and heels and move around the room with ease. He had no difficulty getting on and off the examination table. His writing was legible and he was able to tie his shoelaces. He demonstrated full ("5/5") grip strength and overall extremity strength bilaterally. He was neurologically intact and Romberg (balance) testing was negative. His straight leg-raising test was negative. The only finding was some mildly reduced knee flexion bilaterally. The range of motion in his neck and shoulders was within normal limits. The claimant's mental status was normal. He was noted to be independent in his activities of daily living and it was stated he could lift up to thirty pounds. These findings are fully consistent with a limitation to the light-duty exertional level.
>
> While the claimant's hypertension was noted to be uncontrolled, his gout was controlled with medication and his hypothyroidism was "asymptomatic." Dr. Mathew stated there was no evidence of any limitation or restriction of motion at the claimant's bilateral wrists. His manual dexterity was intact. The claimant reported using his CPAP device nightly and he denied any daytime sleepiness. She found the range of motion in the claimant's knees to be within normal limits considering his history of bilateral total knee replacements. There is nothing persuasive in this report to suggest any impairment preventing the claimant from performing a restricted range of light-duty work activity.

Tr. 17-18 (citation omitted).

The Court finds the ALJ did not err in determining Dr. Hinton's opinion to be unpersuasive. As to Dr. Hinton's conclusion that Plaintiff would be unable to compete in the open labor market, such an opinion may be discredited by an ALJ because that determination is, in fact, reserved to the Commissioner. *Ellis v. Barnhart*, 392 F.3d 988, 994 (8th Cir. 2005) ("A medical source opinion that an applicant is 'disabled' or 'unable to work,' however, involves an issue reserved for the Commissioner."). Although an ALJ may consider an examination or

opinion that was part of a workers' compensation claim, statements by doctors related to such a claim are *not* binding on the Social Security Administration. *See Prosch v. Apfel*, 201 F.3d 1010, 1014 (8th Cir. 2000); *Loeffler v. Massanari*, 23 Fed. Appx. 605, 606 (8th Cir. 2001) (citing 20 C.F.R. § 404.1504).

Contrary to Plaintiff's assertion, the ALJ considered the consistency and supportability of Dr. Hinton's opinion. Tr. 20. For claims like Plaintiff's, filed after March 27, 2017, an ALJ evaluates medical opinions pursuant to 20 C.F.R. § 404.1520c. These rules provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [Plaintiff's] medical sources." 20 C.F.R. § 404.1520c(a). Rather, an ALJ is to evaluate the persuasiveness of any opinion or prior administrative medical finding by considering the: (1) supportability of the opinion with relevant objective medical evidence and supporting explanations; (2) consistency with the evidence from other medical sources and nonmedical sources in the claim; (3) relationship with the plaintiff, including length, purpose, and extent of treatment relationship, whether it is an examining source, and frequency of examination; (4) specialization; and (5) other relevant factors. 20 C.F.R. § 404.1520c(c).

The rules make clear that supportability and consistency are the "most important factors;" therefore, an ALJ must explain how she considered these factors in the decision. 20 C.F.R. § 404.1520c(b)(2). An ALJ may, but is not required to, explain how she considered the remaining factors. [2] *Id. See Brian O v. Comm'r of Soc. Sec.*, 2020 WL 3077009, at *4 (N.D.N.Y. June 10, 2020) (quoting 20 C.F.R. § 404.1520c(a), (b)) ("Although the new regulations eliminate the

---

[2] The Court notes Plaintiff's brief includes a few sentences in which she argues the ALJ "failed to consider Plaintiff's subjective complaints" when evaluating Dr. Hinton's opinion. *See* ECF No. 19 at 6. This argument is misguided. Supportability and consistency are the only mandatory factors to be evaluated when determining the persuasiveness of opinion evidence.

9

perceived hierarchy of medical sources, deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still 'articulate how he or she considered the medical opinions' and 'how persuasive he or she finds all of the medical opinions.'" (alterations omitted)).

The ALJ found Dr. Hinton's opinion regarding a workers' compensation claim to be inconsistent with the consultative examination performed by Dr. Mathews two weeks prior on December 10, 2018. *Id.* (citing Tr. 833-41). While Dr. Hinton observed Plaintiff to ambulate with an antalgic gait, Dr. Mathews found his gait to be within normal limits. *Compare* Tr. 836 to 847. Notably, Dr. Mathews did not observe the same reduced grip strength, reduced range of motion, or inability to squat as Dr. Hinton reported. *Id*. While Dr. Mathews noted some mild reduced flexion, Plaintiff was able to bend and squat at the December 10th consultation, tie his own shoelaces, get on and off the exam table, and move around the room with ease. *Id.* Further, Plaintiff told Dr. Mathews that he could lift up to 30 pounds, which is contrary to Dr. Hinton's more restrictive conclusions. Tr. 836.

Additionally, the ALJ explicitly determined that the objective evidence in the record did not support Dr. Hinton's opinion of complete disability. The ALJ cited to records throughout his opinion reflecting observations contrary to those of Dr. Hinton. For example, Plaintiff exhibited almost full strength in his left knee four months after his left total knee arthroplasty, and his right knee was noted to be recovering well six weeks after his right total knee arthroplasty. Tr. 15 (citing Tr. 1154). In May of 2017, Plaintiff reported some joint pain, but indicated his medication helped, and he was doing okay otherwise. Tr. 16 (citing Tr. 494). In June of 2017, Plaintiff demonstrated normal range of motion despite complaining of lower extremity swelling. *Id.* (citing Tr. 466). In August of 2017, Plaintiff was described to have "good exercise tolerance"

and he reported "no pain to legs with ambulation." *Id.* (citing Tr. 797). Rather than be sedentary, Plaintiff was encouraged to regularly exercise and be active. Tr. 508. Despite reporting bilateral knee pain, Plaintiff was observed to have adequate range of motion in the knees, the ability to walk on his heels and toes, and 5/5 motor strength bilaterally. *Id.* (citing Tr. 483). In March of 2018 and December of 2019, physical examinations revealed no edema in his extremities and normal musculoskeletal exams. Tr. 17 (citing Tr. 762), Tr. 19 (citing Tr. 1119). In May of 2021, Plaintiff was again encouraged to exercise and "maintain an active lifestyle as much as possible." Tr. 19 (citing Tr. 1200).

"The paragraph concerning the ALJ's evaluation of [a medical] opinion cannot be read in isolation but must be read as part of the overall discussion of plaintiff's RFC assessment." *Trosper v. Saul*, No. 1:20-CV-51-DDN, 2021 WL 1857124, at *5 (E.D. Mo. May 10, 2021)). Thus, when read in context, as part of the overall discussion of Plaintiff's RFC, along with the fact that the ALJ did explicitly discuss consistency and supportability within the section addressing Dr. Hinton's opinion, the Court finds the ALJ appropriately evaluated the examiner's persuasiveness.

Next, Plaintiff argues the ALJ should have found his obesity to be more restrictive. ECF No. 9 at 8. The ALJ determined that "[w]hile the claimant's morbid obesity surely exacerbates his knee and back pain, there is nothing persuasive in the record to suggest he is incapable of a restricted range of light-duty work activity from a physical or a mental health standpoint." *See* Tr 19 at 8. Plaintiff cites to several records which, in his opinion, could support a higher degree of limitations due to his weight. Plaintiff argues his obesity, combined with stage 3 chronic kidney disease, and knee pain "provide something 'persuasive in the record' to suggest that Plaintiff

11

cannot stand and/or walk six (6) hours of every eight (8) hour workday, five (5) day every week, as required by light work." ECF No. 9 at 9.

The Court does not find Plaintiff's argument to be well-taken. Plaintiff essentially asks the Court to reweigh the evidence which the ALJ has already reviewed. The ALJ considered Plaintiff's obesity to be a severe impairment, reviewed and summarized the records relating to Plaintiff's knee pain as discussed above, including medical opinion evidence, and determined the record did not support a sedentary limitation. The ALJ did the same for his chronic kidney disease, *see* Tr. 17-19, determining that "whether the claimant's kidney disease is mild or moderate is not particularly important since it does not appear to be severe enough to reduce him to the sedentary exertional level, particularly in light of [] more recent imaging results." Tr. 19.

The ALJ's weighing of the evidence fell within the available "zone of choice," and the Court cannot disturb that decision merely because it might have reached a different conclusion based on the records Plaintiff cited to in opposition. *See Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011). *See also Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012) (holding it is not appropriate to reverse the ALJ's decision simply because some evidence would support a different conclusion); *KKC ex rel. Stoner v. Colvin*, 818 F.3d 364, 370 (8th Cir. 2016) (an ALJ will not be "reverse[d] merely because substantial evidence also exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently.").

Lastly, Plaintiff argues the ALJ erred in formulating his RFC because she failed to properly evaluate the December 27, 2018 medical opinion of State agent, Dr. Dennis McGraw. ECF No. 19 at 9-11 (citing Tr. 131-33). Dr. McGraw opined that Plaintiff could occasionally lift and/or carry 20 pounds; frequently lift and/or carry 10 pounds; stand and/or walk for a total of

12

about 6 hours in an 8-hour workday; sit for a total of about 6 hours in an 8-hour workday, push and/or pull without limitations; climb ramps/stairs and balance without limitation; occasionally climb ladders/ropes/scaffolds and stoop; and frequently kneel, crouch, and crawl. Tr. 131-32. Dr. McGraw did not apply any environmental limitations other than recommending Plaintiff avoid concentrated exposure to unprotected heights and heavy machinery due to uncontrolled hypertension. Tr. 132.

> In evaluating Dr. McGraw's opinion, the ALJ wrote:
>
> Dennis McGraw, D.O., evaluated the claimant's medical history for the Agency in December 2018. He limited him to a restricted range of light-duty work activity, with limitations only slightly less restrictive than those detailed in the residual capacity finding above. While the undersigned found it appropriate to also limit the claimant's exposure to vibration, Dr. McGraw's opinion is persuasive since it is consistent with the medical evidence showing no objective findings to substantiate the claimant's allegations of debilitating pain so severe as to prevent him from performing work at the light-duty exertional level. This finding is supported by the claimant's own report to this December 2018 consultative examiner that he can lift up to thirty pounds.

Tr. 20 (internal citations omitted). Plaintiff argues this analysis is erroneous because there is objective evidence to support his subjective allegations of pain, the ALJ should have considered his reports of pain when evaluating Dr. McGraw's opinion, and the ALJ did not explain why Dr. McGraw's opinion was more persuasive than Dr. Hinton's.

As discussed above, however, just because there is objective evidence to possibly support two conclusions, the Court should not reweigh the evidence and choose a contrary position to the ALJ's. Plaintiff does not show how substantial evidence fails to support Dr. McGraw's RFC opinion, and there is no requirement that the ALJ considers Plaintiff's subjective allegations of pain when evaluating medical evidence. *See supra* at fn. 2. Moreover, the ALJ explicitly indicated why he found Dr. McGraw's opinion to be consistent and supported by the record.

13

While Plaintiff may not agree, the Court has already determined that the ALJ appropriately assessed Dr. Hinton's report as unpersuasive and will not repeat those conclusions.

Although the ALJ did not include Dr. McGraw's environmental limitation of avoidance of unprotected heights and heavy machinery in the RFC, there is no error as Plaintiff suggests. First, there is no requirement that an ALJ adopt all of the findings or language of the state agency medical consultant, "even if the opinion is given substantial weight." *See Owens v. Saul*, 2020 WL 2319880, at *4 (W.D. Mo. May 11, 2020). Nor do the ALJ's findings have to mirror a particular report, form, or opinion. *See Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011) (holding the ALJ is not required to rely entirely on a particular physician's opinion). Second, even if the ALJ should have included those restrictions in the RFC, the error would be harmless, because as the Commission explains, none of the alternative jobs that the ALJ listed – folder, classifier, and ironer – involve exposure to moving mechanical parts or high exposed places. *See* ECF No. 21 at 8-9 (citing DOT #369.687-018 (folder) (available at 1991 WL 673072); #361.687-014 (classifier) (available at 1991 WL 672991); #590.685-042 (ironer) (available at 1991 WL 684583).

Therefore, the Court finds the ALJ properly formulated Plaintiff's RFC and substantial evidence on the record as a whole supports the ALJ's decision. Remand is neither necessary, nor appropriate.

**B. Credibility Assessment**

Plaintiff argues the ALJ failed to make an express credibility determination detailing the reasons for discrediting his testimony. ECF No. 19 at 12. He also contends the ALJ erred by making the following statement during his hearing: "Cause, I mean, obviously – I mean the claimant has a solid work history. He'd be out working, I mean he's young, so." *Id.* at 11-12

14

(citing Tr. 69). Plaintiff argues the ALJ should not have made this statement at the hearing if she was going to find the objective evidence did not support his complaints of pain. Plaintiff also asserts the statement shows the ALJ incorrectly based her decision on the perception on "whether Plaintiff is too young to be unable to work." *Id.* at 12.

As a preliminary matter, Social Security Ruling 16-3p[3] eliminated the word "credibility" from the analysis of subjective complaints, replacing it with "consistency" of a claimant's allegations with other evidence. SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017); 20 C.F.R. §§ 404.1529. The Rule incorporates the familiar factors from *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984) which previously guided an ALJ's analysis of subjective complaints, including: objective medical evidence, the claimant's work history, and other evidence relating to (1) the claimant's daily activities; (2) the duration, frequency and intensity of the symptoms (*i.e.*, pain); (3) precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; and (5) any functional restrictions. *See Schwandt v. Berryhill*, 926 F.3d 1004, 1012 (8th Cir. 2019). If the evidence as a whole "undermines" or "cast[s] doubt on" a claimant's testimony, an ALJ may decline to credit a claimant's subjective complaints. *Id.* If the ALJ explicitly discredits a claimant's subjective complaints and gives good reasons, the Eighth Circuit has held it will defer to the ALJ's judgment, even if the ALJ does not cite to *Polaski* or discuss every factor in depth. *See Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007); *Strongson v. Barnhart*, 361 F.3d 1066, 1072 (8th Cir. 2004).

The ALJ in this case acknowledged the obligation to evaluate the consistency of Plaintiff's allegations with the evidence in the record. The ALJ wrote: "Pain is a completely subjective phenomenon. Consequently, the undersigned must look to whether the claimant's

---

[3] The revised Ruling became effective on March 27, 2017. It applies to determinations or decisions made by the Social Security Administration on or after March 28, 2016.

subjective complaints are consistent with the evidence to the extent his pain is disabling. The criteria of 20 CFR 404.1529 and 416.929 are used in making this determination." Tr. 15. The ALJ proceeded to cite to objective evidence in the record and determined that the evidence did not support the severity of Plaintiff's complaints. Tr. 15-21. For example, the ALJ considered Plaintiff's improvement after two knee surgeries, Tr. 15 (citing Tr. 1154); indications that his medication helped and he was feeling better, Tr. 16 (citing Tr. 494); normal range of motion despite complaints of lower extremity swelling, *id.* (citing Tr. 466); records showing he had "good exercise tolerance" and reports of "no pain to legs with ambulation," *id.* (citing Tr. 797); his ability to walk on his heels and toes and 5/5 motor strength bilaterally, *id.* (citing Tr. 483); normal musculoskeletal exams, Tr. 17 (citing Tr. 762), Tr. 19 (citing Tr. 1119); a medical recommendation that he "maintain an active lifestyle as much as possible," Tr. 19 (citing Tr. 1200); indications that his chronic kidney disease remained mild to moderate within the relevant time, Tr. 18-19 (citing Tr. 1117, 1125, 1221, 1237); stable moods despite situational depression, Tr. 16 (citing Tr. 508, 511); and radiological results did not support limiting Plaintiff to the sedentary exertional level. Tr. 19 (citing Tr. 1134-36).

      The ALJ also considered Plaintiff's activities of daily living as required by the Regulations. The ALJ noted that during the consultative examination with Dr. Mathew, Plaintiff indicated he was independent in all of his activities of daily living and confirmed he could lift up to 30 pounds. Tr. 16-17, 836. Additionally, the ALJ cited to Plaintiff's own Function Report, in which he indicated he was able to clean his home, prepare meals, drive, go out alone, and shop. Tr. 17, 363-74. The ALJ found such independence to be inconsistent with a finding of disability. Tr. 17.

The effectiveness of Plaintiff's medication and treatment was also evaluated by the ALJ. For example, the ALJ noted that his opioid medication was helpful for alleviating his musculoskeletal pain. Tr. 16, 483, 494. Plaintiff also received two epidural steroid injections at his L4. Tr. 16, 481-484. The first injection provided him with 40% relief so his physician administered a second injection for additional benefit. Tr. 16, 824. The ALJ also noted that despite a prescription to treat a mild episode of his major depressive disorder, his mental status continued to be stable and unremarkable. Tr, 16, 508. The ALJ observed that he was later denied an opioid prescription not because of a lack of efficacy, but because he tested positive for methamphetamine during a drug screen. Tr. 19, 1201.

Plaintiff's solid work history prior to the alleged onset date, which the ALJ noted at the hearing, does not negate the credibility or consistency findings that were discussed in the determination. *Moore v. Saul*, 2020 WL 5632454, at *7 (E.D. Mo. Sept. 21, 2020), *aff'd*, 849 F. App'x 615 (8th Cir. 2021) (although a claimant may have a good work history, an ALJ may find other reasons to discredit his or her subjective complaints, such as a consideration of a claimant's "daily activities, the limited findings on examination, and the lack of any functional limitations by examining physicians."). Assessing a Social Security claimant's subjective complaints "is a matter properly within the purview of the ALJ." *Chaney v. Colvin*, 812 F.3d 672, 676 (8th Cir. 2016) (citing *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003)). The ALJ is not required to credit the claimant's subjective complaints when they are inconsistent with the record as a whole. *See Lawrence v. Saul*, 970 F.3d 989, 995 n.6 (8th Cir. 2020); *Battles v. Sullivan*, 902 F.2d 657, 660 (8th Cir. 1990).

The ALJ's decision to not give more weight to Plaintiff's work history does not undermine the ALJ's assessment of Plaintiff's subjective complaints. The ALJ's decision

17

considered all relevant evidence in the longitudinal record that supported and detracted from Plaintiff's subjective complaints. Further, the ALJ confirmed in her decision that she considered the factors articulated in 20 C.F.R. 404.1529(c)(3). Thus, the Court finds no error in the ALJ's statement during the hearing related to Plaintiff's respectable work history.

As to describing Plaintiff as "young" during the hearing, the Court also finds no error. The ALJ made it explicitly clear in her decision that she was aware of Plaintiff's age and the age categories he should be evaluated within according to the Social Security Regulations:

> The claimant was born on January 16, 1968 and he was 48 years old, which is defined as a younger individual age 18-49, on January 26, 2016, his alleged onset date of disability. The claimant subsequently changed age category to an individual closely approaching advanced age (20 CFR 404.1563 and 416.963).

Tr. 21. Nothing in the ALJ's opinion evidence that she evaluated his claims outside of the appropriate age categories.

Therefore, the Court finds the ALJ properly considered the consistency of Plaintiff's subjective complaints and remand is not necessary.

### C.  ALJ's Reliance on Fourth Circuit Case Law

Finally, Plaintiff argues the ALJ inappropriately relied on a Fourth Circuit decision, *Albright v. Comm'r of Soc. Sec.*, 174 F.3d 473 (4th Cir. 1999), when making her determination. Plaintiff refers to dialogue from the March 14, 2022 hearing between the ALJ and Plaintiff's attorney in which they were discussing the alleged onset date of January 26, 2016, and the fact that Plaintiff previously filed an application for DIB with the same onset date, which was denied by another ALJ on May 23, 2018. The discussion in pertinent part was as follows:

ALJ: Okay. There's a prior decision.

ATTY: Okay. Yeah.

18

ALJ: 2018. And that puts him at light, but you're still maintaining [the same] onset date.

ATTY: I thought we amended that at the last hearing.

ALJ: Okay. Let me go back and look because I don't have anything in the file. And I don't have a note on it. Yeah, I don't see anything – no, I don't see anything in the file.

. . .

ATTY: Okay. So, [m]e and Mr. Thompson have discussed this many times through the years about the onset going to be amended because the prior ALJ decision, so I believe it was 5.3.18, so. Is that right?

CLMT: That's what you told me [] last week.

ALJ: Yeah, 5.3.18 was the last – was the decision.

ATTY: Okay, so, and then we can – we can definitely go to 5.4.18.

ALJ: But you didn't tell me that you wanted to change something when there's a denial there.

ATTY: Yeah, I was trying to see if we could go to an actual objective piece that we could return to here [phonetic]. Other than just going to the day after.

ALJ: I mean you can certainly go to the day after and I'll know it's not law in this region or circuit has a case that I thought was very well taught called Albright [phonetic] which basically means if you're going to disagree with a prior decision you need to explain why. And since it's not appealed and they actually did that to help claimants because they were saying they were sedentary until they turn 50 and then they'd say they were at light. So, it was like a – but it cuts both ways, you know, obviously. And so I would have to have some reason – because I think it's good law even if it's not recognized specifically in this region. I do think it's good law because we can't just bounce around to what we want to do. We have to have support for it, and I just don't see anyt[h]ing the day after and I know I looked for that before.

Tr. 91-92.

The Court cannot find error in the ALJ's reference of *Albright* during the hearing. Significantly, the ALJ acknowledges *Albright* is "not law in this region or circuit." The ALJ

19

simply appears to be discussing how another circuit would handle a situation with a prior determination and a shared alleged onset date. Nowhere in the instant ALJ's opinion, Tr. 7-29, does she cite to *Albright* or apply its reasoning. Rather, as the Commissioner correctly points out: "Comparing the current RFC determination to the RFC determination made in connection with Plaintiff's prior claim shows that the current RFC differed from the prior RFC in kneeling and crawling, as well as in exposure [to] hazardous machinery and unprotected heights (Tr. 14 versus Tr. 112)." ECF No. 21 at 13. Thus, the ALJ clearly determined and formulated her own RFC based on the substantial evidence in the record as a whole, and did not merely defer to the limitations of a prior opinion, or the Fourth Circuit's decision in *Albright*.

For the above reasons, the Court finds remand is not necessary.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff Jeffrey W. Thompson's Complaint is **DISMISSED, with prejudice**. A separate judgment will accompany this Memorandum and Order.

So Ordered this 27th day of November, 2023.

_____
STEPHEN R. WELBY
UNITED STATES MAGISTRATE JUDGE